IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SVERRE ERIKSEN and JARRED MIRABAL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC OF TENNESSEE, LLC,<br><br>Defendant. | Case No.:<br><br>**JURY DEMAND** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Sverre Eriksen and Jarred Mirabal ("Plaintiffs"), through their undersigned counsel, individually and on behalf of all persons similarly situated, file this Class and Collective Action Complaint against Defendant CoreCivic of Tennessee, LLC ("Defendant" or "CoreCivic"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Arizona Wage Act, A.R.S. § 23-351, *et seq.* ("AWA"), and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22 *et seq*. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

### INTRODUCTION

1. CoreCivic is "the nation's largest private prison owner and one of the largest prison operators" with "44 facilities . . . [housing] 66,399 beds" located in states across the United States.[1]

2. To operate its vast network of prisons and care for its massive, incarcerated

---

[1] CoreCivic Form 10-K at 29 (February 21, 2023) https://materials.proxyvote.com/Approved/21871N/20230315/FO10K_530523/INDEX.HTML?page=1 (last visited January 30, 2024).

population, CoreCivic employs more than 11,000 employees nationwide.[2]

3. This case challenges CoreCivic's long standing policy of willfully failing to properly pay all overtime compensation owed to its non-exempt correctional and detention center officers ("Correctional Officers")[3] for all hours worked over forty in a workweek in violation of applicable federal and state laws. Specifically, CoreCivic required Plaintiffs and similarly situated Correctional Officers to undergo security screenings each shift while off-the-clock and without pay. Although CoreCivic has faced and settled numerous lawsuits for this exact conduct, CoreCivic refuses to alter its operating procedures and continues to openly defy its wage related obligations under the FLSA and state wage laws.

## JURISDICTION AND VENUE

4. The exercise of jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendant maintains its principal place of business in this District and conducts a substantial portion of its business activities in this District.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

---

[2] *Id.* at 37.

[3] For ease of reference, Plaintiffs use the term "Correctional Officers" to refer to Correctional Officers, Senior Correctional Officers, Detention Officers, Senior Detention Officers, Assistant Shift Supervisors, and similar job titles for employees that are paid hourly wages and are primarily engaged in maintaining the security of CoreCivic's facilities and the supervision of the individuals incarcerated therein.

## PARTIES

7. Plaintiff Eriksen is an individual residing in Arizona City, Arizona. Plaintiff Eriksen worked for CoreCivic at the Eloy and Florence, Arizona facilities from February 12, 2018 until April 22, 2023. While working for CoreCivic, Plaintiff Eriksen held three separate non-exempt, hourly positions: Correctional Officer (February 12, 2018 to March 28, 2020); Senior Correctional Officer (March 29, 2020 through December 5, 2020); and Assistant Shift Supervisor (December 6, 2020 through April 22, 2023). Plaintiff Eriksen's written consent to be a plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

8. Plaintiff Mirabal is an individual residing in Jemez Pueblo, New Mexico. Plaintiff Mirabal worked for CoreCivic at its Cibola County Correctional Center in Milan, New Mexico as a Detention Officer from October 2018 to October 2019, and as an Assistant Shift Supervisor from August 2021 to September 29, 2022. Plaintiff Mirabal's written consent to be a plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit B.

9. Defendant is a Tennessee company that maintains its principal address at 5501 Virginia Way, Brentwood, TN 37027.

10. CoreCivic and/or CoreCivic's officers, directors, agents, employees, or representatives committed the unlawful acts alleged in this Complaint while actively engaged in the management of CoreCivic's businesses or affairs and with the authorization of CoreCivic.

11. At all times relevant to this Complaint, Plaintiffs and similarly situated Correctional Officers were "employees" of CoreCivic and covered by the FLSA.

12. At all times relevant, Plaintiff Eriksen and similarly situated Correctional Officers in Arizona were "employees" of CoreCivic and covered by the AWA. *See* A.R.S. § 23-350(2).

13. At all times relevant, Plaintiff Mirabal and similarly situated Correctional Officers

3

Case 3:24-cv-00197   Document 1   Filed 02/21/24   Page 3 of 18 PageID #: 3

in New Mexico were "employees" of CoreCivic and covered by the NMMWA. N.M. STAT. ANN. § 50-4-21(C).

14. At all times relevant, CoreCivic was an "employer" covered by the FLSA, AWA, and NMMWA. *See* A.R.S. § 23-350(3); N.M. STAT. ANN. § 50-4-21(B).

15. CoreCivic employed Plaintiffs and continues to employ similarly situated Correctional Officers across the United States in Arizona, California, Colorado, Florida, Georgia, Kentucky, Kansas, Mississippi, Montana, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, West Virginia, and Wyoming.

16. CoreCivic employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

17. CoreCivic's annual gross volume of sales made or business done exceeds $500,000. In fact, CoreCivic reported a total annual revenue of "$1.85 billion" in 2022.[4]

## **COLLECTIVE DEFINITION**

18. Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of himself and the following similarly situated persons:

> All current and former hourly paid, non-exempt Correctional Officers who worked for CoreCivic in CoreCivic's correctional and detention center facilities and underwent CoreCivic's security screening procedures during the past three years in the United States and who worked more than forty (40) hours in at least one workweek (the "FLSA Collective" or "Collective Members").

---

[4] *News Release: CoreCivic Reports Fourth Quarter and Full Year 2022 Financial Results*, CORECIVIC.COM (February 8, 2023) https://ir.corecivic.com/news-releases/news-release-details/corecivic-reports-fourth-quarter-and-full-year-2022-financial (last visited January 20, 2024).

19. Plaintiff brings Count II and of this lawsuit pursuant to FED. R. CIV. P. 23, on behalf of himself and the following class:

> All current and former hourly paid, non-exempt Correctional Officers who worked for CoreCivic in CoreCivic's correctional and detention center facilities and underwent CoreCivic's security screening procedures during the past one year in Arizona and who worked over forty (40) hours in at least one workweek (the "Arizona Class" or "Arizona Class Members").

20. Plaintiff Mirabal brings Count III and of this lawsuit pursuant to FED. R. CIV. P. 23, on behalf of himself and the following class:

> All current and former hourly paid, non-exempt Correctional Officers who worked for CoreCivic in CoreCivic's correctional and detention center facilities and underwent CoreCivic's security screening procedures during the past three years in New Mexico and who worked over forty (40) hours in at least one workweek (the "New Mexico Class" or "New Mexico Class Members").

21. The Arizona Class and the New Mexico Class are together referred to as the "State Law Classes."

22. The FLSA Collective, the Arizona Class, and the New Mexico Class are together referred to as the "Classes," with individual members referred to as "Class Members" or "Correctional Officers."

23. Plaintiffs reserve the right to redefine the Classes prior to notice, and thereafter, as necessary.

## **FACTS**

24. Defendant is a company that provides private for-profit prison services across the United States and employs thousands of Correctional Officers in correctional and detention centers.

25. Defendant operates over forty (40) secure facilities throughout the country.

26. Defendant's facilities are centrally operated and controlled by Defendant.

27. Defendant applies uniform employment policies throughout its correctional and

detention center facilities, including its timekeeping, payroll, and security screening policies and procedures.

28. Defendant employed Plaintiff Eriksen in multiple non-exempt hourly roles in which he qualified for and received overtime payments including as a Correctional Officer, Senior Correctional Officer, and Assistant Shift Supervisor.

29. Defendant employed Plaintiff Mirabal as a Detention Officer and as an Assistant Shift Supervisor. In both roles Defendant classified Plaintiff Mirabal as a non-exempt employee entitled to overtime compensation and paid him an hourly rate.

30. At all times relevant to this Complaint, Defendant has employed Plaintiffs and other similarly situated Correctional Officers in hourly non-exempt roles.

31. During all times relevant, Plaintiffs worked, and other Correctional Officers regularly work, in excess of forty (40) hours per week.

32. The primary job duty of the Correctional Officers, including Plaintiffs, is to serve, manage, and oversee the inmate population at the prison centers. Defendant's Correctional Officers are responsible for the safety, custody, and discipline of inmates or detainees held at correctional and detention centers operated by Defendant.

33. Among other duties, Correctional Officers search for contraband, ensure security, and count, feed, and supervise inmates and detainees.

34. Given the nature of the business, Defendant's facilities are secured by locked doors and metal detectors.

**A. Defendant Fails to Pay Correctional Officers for Completing Security Screenings Before Each Shift.**

35. At the beginning of each shift, prior to clocking in, Defendant requires Correctional Officers to undergo a security screening.

36. Upon arrival at each facility, Correctional Officers enter through a front office and swipe their badges before proceeding to the security screening. These badge swipes are timestamped and recorded in Defendant's Lobby Management System records.

37. The front desk badge swipe is done for safety and security purposes so that in the event of an emergency or lock down Defendant has a comprehensive record of all employees, visitors, and other individuals that have entered or left the facility each day.

38. After passing the front desk, Correctional Officers undergo Defendant's security screening process.

39. During the security screening process, the Correctional Officers empty their pockets; remove their shoes, belts, jackets, and all metal objects; empty their bags; and submit all personal items in their possession for inspection.

40. The Correctional Officers then walk through a metal detector before reclaiming their possessions and donning their shoes, belts, and jackets.

41. If the metal detector alerts, Defendant requires Correctional Officers to submit to further metal detecting wand screening or pat-down searches as part of their security process before clocking-in.

42. At times, Defendant requires Correctional Officers to submit to additional sniff searches conducted by K-9 units as part of the security process.

43. Only after clearing the security screening process could Plaintiffs and other Correctional Officers proceed through several additional locked security doors into the briefing room where Correctional Officers could clock-in for the start of their shift.

44. Correctional Officers are paid only from the time that they clock in and are not paid for any work performed prior to that time, including the required pre-shift security screening

7
Case 3:24-cv-00197     Document 1     Filed 02/21/24     Page 7 of 18 PageID #: 7

process.

45. Plaintiff Eriksen estimates that Defendant's pre-shift security screenings took between 5-10 minutes to complete each shift depending on the number of employees in line waiting to complete the security process.

46. Plaintiff Mirabal estimates that Defendant's pre-shift security screenings took between 5-10 minutes to complete each shift, however, the process could take up to 20-25 minutes depending on the number of employees in line waiting to complete the security process.

47. As part of Defendant's orientation program, Defendant instructs Correctional Officers to arrive early for their shifts to account for the time it takes to pass through the security screening before clocking in.

48. Defendant's policies on attendance and tardiness require Correctional Officers to clock in at the start of their scheduled shift start times. Correctional Officers that accrue multiple "tardies" are subject to progressive discipline up to and including termination.

49. To not accrue multiple tardies and face discipline or termination, Plaintiffs and Correctional Officers had to arrive prior to their shift start to complete the security screening process.

50. Defendant requires Correctional Officers to undergo this screening for the purposes of safety, and to prevent Correctional Officers and other visitors from inadvertently or intentionally bringing contraband into the correctional and detention centers.

51. The security screenings are also necessary to the principal work Correctional Officers perform, namely providing security in the prisons and searching for contraband. The security screenings are conducted on Defendant's premises, are controlled and required by Defendant, and are undertaken primarily for the benefit of Defendant and Defendant's business.

52. Additionally, preventing weapons and other contraband from entering the prison is an essential element of the Correctional Officers' job duties with the ultimate purpose of maintaining a secure prison environment.

53. Keeping weapons and other contraband out of the prison is necessarily tied to the correctional and detention officers' work of providing security and searching for contraband.

54. Defendant cannot eliminate the screenings altogether without impairing the Correctional Officers' ability to complete their work. If Defendant eliminated the security screening, Correctional Officers and other visitors could inadvertently or intentionally bring weapons or other contraband into the prison. The introduction of weapons and other contraband into the prison would most certainly result in a less secure prison and would impair Correctional Officers' ability to provide security, engage with the inmates/detainees, and search for contraband.

55. Thus, undergoing security screenings is integral and indispensable to the principal activities Correctional Officers are employed to perform.

56. Defendant, however, has failed to compensate Plaintiffs and similarly situated Correctional Officers for time spent undergoing pre-shift security screenings.

57. Defendant's failure to compensate Plaintiffs and the similarly situated Correctional Officers has resulted in unpaid overtime in violation of the FLSA and state law. *See Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1289 (10th Cir. 2020) (pre-shift security screenings of detention officers are integral and indispensable under *Busk* and therefore must be counted as hours worked for purposes of computing overtime).

**B. Defendant Has Willfully Failed to Pay Correctional Officers for Security Screenings.**

58. Defendant's actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

59. Even though the FLSA requires overtime premium compensation for hours worked over forty hours per week, Defendant has not properly paid Plaintiffs and other Correctional Officers overtime compensation for all overtime hours worked as a result of requiring Plaintiffs and Correctional Officers to complete security screenings off-the-clock.

60. Defendant knew, or absent its own recklessness should have known, that the Plaintiffs and Correctional Officers are or were entitled to such overtime premiums.

61. Defendant knows that Plaintiffs and Correctional Officers completed the security screening process while off the clock, because Defendant designed this process, requires Plaintiffs and Correctional Officers to complete it before clocking in each day, and still fails to compensate Plaintiffs and Correctional Officers for this work.

62. Defendant could have paid Plaintiffs and Correctional Officers for the time spent in security screenings but chose not to. Defendant could have permitted Plaintiffs and Correctional Officers to clock-in before completing the security screenings but chose not to. Defendant could have paid Plaintiffs and Correctional Officers from the time they completed the badge swipe at the front office that Defendant requires for safety and security purposes but chose not to.

63. As such, Defendant has failed to pay Plaintiffs and Correctional Officers all overtime compensation owed.

64. By failing to pay all the compensation owed to Plaintiffs and Correctional Officers, Defendant has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

65. CoreCivic has been on notice of its wage and hour obligations under the FLSA and state law—specifically with respect to security screenings—because Defendant has previously been sued for similar violations of wage and hour laws. *See Gonzalez v. Corrections Corporation of America et al.*, Case No. 1:16-cv-01891 (E.D. Cal. June 26, 2016); *Dew v. CoreCivic Inc.*, Case

No. 3:18-CV-00847 (M.D. Tenn. Sept. 7, 2018); *Ballard et al v. CoreCivic of Tennessee, LLC*, No. 3:20-cv-00418 (M.D. Tenn. May 15, 2020); *Jim v. CoreCivic of Tennessee, LLC*, No. 1:20-cv-00618 (D.N.M. June 25, 2020); *Falline v. CoreCivic of Tennessee, LLC*, No. 2:21-CV-01802 (D. Nev. Sept. 29, 2021); *Anthony Turner v. CoreCivic of Tennessee, LLC*, 2:22-cv-00775 (D. Nev. April 22, 2022).

66. CoreCivic's continuing violations of the FLSA wage provisions clearly indicates that it has not made good-faith efforts to comply with the FLSA and applicable state law.

### COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

67. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the Collective Members as defined above.

68. Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

69. Plaintiffs and the Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to CoreCivic's previously described common business and compensation practices as described herein, and, as a result of such practices, have not been properly paid overtime compensation for all hours worked over forty (40) in a workweek during the relevant time period. Resolution of this action requires inquiry into common facts, including, CoreCivic's common timekeeping, compensation, and payroll practices applicable to the employees at issue.

70. The Collective Members are known to CoreCivic, are readily identifiable through HR and payroll records, and can easily be located through CoreCivic's business and human resources records and electronic systems.

71. CoreCivic employs thousands of Collective Members. These similarly situated

employees, consisting of both current and former employees who have been employed by CoreCivic during the relevant three-year statute of limitations period, should promptly be notified in writing of this action through U.S. mail, email, and text message and/or other means, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## **CLASS ACTION ALLEGATIONS**

72. Plaintiffs bring this action as a class action pursuant to FED R. CIV. P. 23 on behalf of themselves and the State Law Classes as defined above.

73. The members of the State Law Classes are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of both the Arizona Class and the New Mexico Class.

74. Plaintiffs will fairly and adequately represent and protect the interests of the State Law Classes because no conflict exists between the claims of Plaintiffs and those of the State Law Classes, and Plaintiffs' claims are typical of the claims of the State Law Classes. Plaintiffs' counsel are competent and experienced in class action litigation and other complex litigation, including wage and hour cases like this one.

75. There are questions of law and fact common to the proposed State Law Classes, which predominate over any questions affecting only individual Class Members, including without limitation:

- whether the time the State Law Class Members spend completing the security screenings each shift is compensable time under applicable state law;

- whether Defendant pays the State Law Class Members for the time spent

completing security screenings each shift; and

- whether the time State Law Class Members spend completing the security screenings each shift is *de minimus*.

76. Plaintiffs' claims are typical of the claims of the State Law Class Members in that they and all other members of the State Law Class Members have suffered damages as a direct and proximate result of the Defendant's uniform employment and payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other members of the State Law Classes' claims and their legal theories are based on the same legal theories as all other members of the State Law Classes.

77. Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the State Law Classes predominate over any questions affecting only individual State Law Class Members.

78. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The State Law Class Members are readily identifiable from Defendant's own employment records. Prosecution of separate actions by individual members of the State Law Classes would create the risk of inconsistent or varying adjudications with respect to individual State Law Class Members that would establish incompatible standards of conduct for Defendant.

13

Case 3:24-cv-00197   Document 1   Filed 02/21/24   Page 13 of 18 PageID #: 13

79. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the State Law Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendant.

80. Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the State Law Classes. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Plaintiff and the Collective Members)

81. All previous paragraphs are incorporated as though fully set forth herein.

82. The FLSA requires that covered non-exempt employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed. *See* 29 U.S.C. § 207 and 29 C.F.R. § 552.100.

83. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

84. CoreCivic is subject to the wage requirements of the FLSA because CoreCivic is an "employer" under 29 U.S.C. § 203(d) and 29 C.F.R. § 552.109(a).

85. At all relevant times, CoreCivic has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203 and 29 C.F.R. § 552.100.

86. During all relevant times, Plaintiffs and Collective Members have been covered employees entitled to the FLSA's protections. *See* 29 U.S.C. § 203(e).

87. Plaintiffs and the Collective Members are not exempt from the requirements of the

FLSA per 29 C.F.R. § 541.3.

88. CoreCivic, pursuant to its policies and practices, has failed and refused to pay overtime wages for all hours worked in excess of forty (40) in a workweek by Plaintiffs and the Collective Members during the relevant time period, including time Plaintiffs and Collective Members spent completing the security screening off the clock.

89. CoreCivic has knowingly failed to properly compensate Plaintiffs and the Collective Members' overtime wages for hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207 and 29 C.F.R. § 552.100.

90. In violating the FLSA, CoreCivic has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

91. Pursuant to 29 U.S.C. § 216(b), employers such as CoreCivic, who intentionally fail to pay an employee's wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
**Failure to Pay Timely Payment of Wages in Violation of the Arizona Wage Act**
**(On Behalf of Plaintiff Eriksen and the Arizona Class Members)**

92. All previous paragraphs are incorporated as though fully set forth herein.

93. The Arizona Wage Act (AWA), A.R.S. § 23-351, covers payments of wages.

94. The AWA requires that "[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period." A.R.S. § 23-351(C)(3).

95. CoreCivic is an employer within the meaning of the term "employer" in the AWA. A.R.S. § 23-350(3).

96. During all relevant times, Plaintiff Eriksen was and Arizona Class Members are covered employees entitled to the above-described AWA's protections. A.R.S. § 23-350(2).

97. CoreCivic has been aware that, under A.R.S. §§ 23-351-353, it is obligated to pay all wages due to Plaintiff Eriksen and Arizona Class Members.

98. CoreCivic has willfully failed to timely pay Plaintiff Eriksen and Arizona Class Member's wages due without a good faith basis for withholding the wages.

99. Pursuant to A.R.S. § 23-355, employers, such as CoreCivic, who fail to pay an employee's wages in conformance with the AWA shall be liable to the employee in an amount that is treble the amount of the unpaid wages.

## COUNT III
### Failure to Pay Overtime Wages in Violation of the New Mexico Minimum Wage Act
### (On Behalf of Plaintiff Mirabal and the New Mexico Class Members)

100. All previous paragraphs are incorporated as though fully set forth herein.

101. The NMMWA requires payment of one and one-half times the employee's regular rate for each hour worked in excess of forty hours per workweek. N.M. STAT. ANN. § 50-4-22(D).

102. At all relevant times, Defendant has been, and continues to be an "employer" within the meaning of the NMMWA. N.M. STAT. ANN. § 50-4-21(B).

103. During all relevant times, Plaintiff Mirabal and New Mexico Class Members have been covered employees entitled to the protections under the NMMWA. N.M. STAT. ANN. § 50-4-21(C).

104. Defendant has been aware that, under N.M. STAT. ANN. § 50-4-22(D), it is obligated to pay all wages due to Plaintiff Mirabal and New Mexico Class Members.

105. Defendant has willfully failed to timely pay Plaintiff Mirabal and New Mexico Class Members' wages due without a good faith basis for withholding the wages.

106. Defendant's unlawful security screening practices have been in place since at least 2018.

107. Defendant's policy of unlawfully requiring New Mexico Class Members to complete security screenings off-the-clock and without proper overtime wages constitutes a continuing course of conduct within the meaning of N.M. STAT. ANN. § 50-4-32.

108. Pursuant to N.M. STAT. ANN. § 50-4-32, Plaintiff Mirabal, on his behalf and on behalf of New Mexico Class Members, seeks to recover unpaid wages for all overtime violations that occurred during their employment due to Defendant's continuing course of conduct in requiring New Mexico Class Members to complete security screenings off-the-clock.

109. Pursuant to N.M. STAT. ANN. § 50-4-26(C)-(E), employers, such as Defendant, who fail to pay an employee's wages in conformance with the NMMWA shall be liable to the employee for unpaid wages plus interest, an additional amount equal to twice the unpaid or underpaid wages, as well as court costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seeks the following relief on behalf of themselves and the Class Members:

    a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

    b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential Collective Members;

    c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the State Law Classes;

    d. Back pay damages (including overtime compensation) and prejudgment interest to

the fullest extent permitted under the law;

e. Liquidated damages to the fullest extent permitted under the law;

f. Treble damages to the fullest extent permitted under the law;

g. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

h. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims and issues.

Dated: February 21, 2024.

        Respectfully submitted,

        */s/ Micah S. Adkins*
        Micah S. Adkins
        TN BAR NO. 036451
        **THE ADKINS FIRM, P.C**.
        Mailing Address:
        8150 N. Central Expressway. Suite 1000
        Dallas, Texas 75206
        (214) 974-4030 Main Telephone

        Physical Address:
        315 Deaderick St., Suite 1550
        Nashville, TN 37238
        (615) 370-4099 Direct Telephone
        MicahAdkins@ItsYourCreditReport.com

        *COUNSEL FOR PLAINTIFFS AND THE PROPOSED*
        *CLASS AND COLLECTIVE MEMBERS*