# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **JULIE LAWSON** | ) | |
| | ) | **Case No. 3:21-cv-00197** |
| **v.** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Holmes** |
| **PENNYMAC LOAN SERVICES, LLC** | ) | |

## O R D E R

Pending before the Court is Defendant PennyMac Loan Services, LLC's ("PennyMac") motion for discovery conference (Docket No. 149) and amended motion for discovery conference (Docket No. 150), which is accompanied by a statement of discovery dispute (Docket No. 150-1). Plaintiff responded in opposition. (Docket No. 156.)[1]

PennyMac's motion for discovery conference (Docket No. 149) is **DENIED AS MOOT** and PennyMac's amended motion for discovery conference (Docket No. 150) is **DENIED** to the extent the Court does not find it necessary to conduct a discovery conference to resolve the parties' current discovery issues. Those issues are decided as detailed below.

---

[1] Plaintiff's response in opposition was filed after the deadline to do so and contains too many pages. Under Local Rule 7.01(a)(3), Plaintiff was required to file her response "not later than fourteen (14) days after service of the motion." The motion was served on Plaintiff on March 28, 2025, so her response was due on April 11, 2025. (Docket No. 150 at 3.) Even if Plaintiff is provided with an additional three days pursuant to Rule 6(d) of the Federal Rules of Civil Procedure, the deadline to respond would be April 16, 2025. However, she did not file her response until April 21, 2025. In addition, the response is 31 pages long, which exceeds the 25 page limitation set forth in Local Rule 7.01(a)(3). Although Plaintiff is proceeding *pro se*, she must comply with the Local Rules, including the requirements to respond in a timely manner and to file documents that are not longer than permitted. Nevertheless, the Court has considered Plaintiff's filing. Plaintiff is however cautioned that further leniency may not be extended.

## I. BACKGROUND

While the Court presumes familiarity with this case, a brief history is recited below to provide context to and explanation of the Court's ruling on the instant discovery dispute.[2] Plaintiff filed this lawsuit *pro se* against PennyMac and Defendant SWBC Mortgage Corp. ("SWBC").[3] (Docket No. 1-1.) Following removal to this Court, Plaintiff amended her complaint several times.

In her fourth amended complaint, which is the operative complaint, Plaintiff alleges that SWBC originated a mortgage loan to Plaintiff for certain real property. (Docket No. 97 at ¶¶ 1–2, 8, 10–11, 18.) A little over a year later, a fire destroyed Plaintiff's home. (*Id.* at ¶ 24.) Plaintiff notified SWBC and her insurer about the fire and indicated that she planned to rebuild her home. (Docket No. 97 at ¶¶ 25, 27, 43.) Later, SWBC transferred the loan to PennyMac. (Docket No. 97 at ¶¶ 3, 22.) PennyMac sent Plaintiff a "Property Loss Claim Package," which contained instructions for Plaintiff to follow to process her claim related to the fire. (*Id.* at ¶ 29.) Plaintiff communicated with PennyMac consistently throughout the time that PennyMac serviced the loan. Plaintiff also received payments from PennyMac for the rebuild, though she returned several of these payments. (*Id.* at ¶¶ 67, 73, 75, 84, 96, 103; Docket No. 12-2 at 100–01.) During the rebuild process, Plaintiff had issues paying various contractors and expenses related to the rebuild, though she continued to make principal payments on the loan. (Docket No. 97 at ¶¶ 20, 62, 70.) Also

---

[2] A lengthy recitation of the procedural and factual background is contained in the Court's December 8, 2023 Report and Recommendation. (Docket No. 113.)

[3] Plaintiff initially filed claims against Angelo Marchese, who she identified as the "Vice President" of PennyMac. (Docket No. 1-2 at ¶ 4.) However, Plaintiff omitted her claims against Mr. Marchese in her "Twice Amended Complaint," so Mr. Marchese is no longer a defendant in or party to this litigation. (Docket No. 61.)

throughout this time, Plaintiff experienced health issues, including swollen hands (*id.* at ¶ 82–83, 85, 104, 107, 157).

Plaintiff eventually received a letter from PennyMac stating that the loan was in default. (*Id.* at ¶ 77.) Plaintiff then placed the Property on the market for sale and later lowered the sale price to $65,000. (*Id.* at ¶¶ 101, 108.) PennyMac then applied a portion of the insurance proceeds in the restricted escrow account to the unpaid principal balance of the loan. (*Id.* at ¶ 136.) Plaintiff requested that the proceeds be applied to the principal balance with a retroactive date of the date of loss, but PennyMac denied the request. (*Id.*; Docket No. 12-2 at 101.) PennyMac then sent Plaintiff a Notice of Default and Intent to Accelerate, which stated that Plaintiff needed to pay a certain amount by a certain date or else she would risk an acceleration of the loan and possibly the foreclosure of the property. (*Id.* at ¶ 141; Docket No. 12-3 at 91–94.) The Property sold for $60,000. (*Id.* at ¶ 152.) PennyMac recorded a Deed of Release stating that the Plaintiff had paid her indebtedness in full and that the Deed of Trust was discharged. (*Id.* at ¶ 153; Docket No. 13-2.)

Accordingly, Plaintiff brought three claims: (1) breach of contract against PennyMac and SWBC; (2) violation of the Tennessee Consumer Protection Act ("TCPA") against PennyMac; and (3) intentional infliction of emotional distress ("IIED") against PennyMac. (*Id.* at ¶¶ 160–81.) In response, PennyMac and SWBC both moved to dismiss the claims. (Docket Nos. 103, 105.) The Court entered a Report and Recommendation recommending that the motions be granted with respect to the TCPA and IIED claims, which should be dismissed, but denied with respect to the breach of contract claim, which should remain. (Docket No. 113.) Despite objections by Plaintiff and SWBC, the District Judge accepted the Report and Recommendation in its entirety. (Docket No. 124.)

The Court then entered a scheduling order on September 16, 2024 after holding an in-person scheduling conference with Plaintiff and Defendants' counsel. (Docket No. 137.) The Court later referred the case to mediation with Retired Magistrate Judge Joe B. Brown. (Docket No. 138.) The parties mediated on December 9, 2024. (Docket No. 144.) Plaintiff and SWBC then jointly moved to dismiss the breach of contract claim against SWBC (Docket No. 143), which the District Judge granted (Docket No. 145). Accordingly, the only remaining claim is for breach of contract against PennyMac.

On March 28, 2025, PennyMac filed the instant motion for discovery conference. (Docket No. 150.) PennyMac states that it conferred with Plaintiff over the discovery disputes at issue, but that Plaintiff did not provide her position to include in the statement of discovery dispute. Accordingly, PennyMac filed the instant motion without Plaintiff's position. However, Plaintiff filed a response in opposition to the motion. (Docket No. 156.)

On April 24, 2025, the Court entered an order directing the PennyMac to provide it with all discovery requests propounded by both PennyMac and Plaintiff, and all documents produced by both PennyMac and Plaintiff. (Docket No. 159.) PennyMac did so by emailing the Court with a link to download the requested documents on April 28, 2025.

## II.     LEGAL STANDARDS

Generally, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).[4]  Rule 26 sanctions a broad search and the information sought by a party need not be admissible to be discoverable. *Id*. Further, the former provision for discovery of relevant

---

[4] Unless otherwise noted, all references are to the Federal Rules of Civil Procedure.

but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" was deleted in the 2015 amendments to Rule 26 because of the incorrect reliance on that phrase to resist discovery. Instead, the concept of reasonably calculated to lead to the discovery of admissible evidence was replaced by the direct statement that information within the scope of relevancy "need not be admissible in evidence to be discoverable."

However, the scope of discovery has "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). It is also "well established that the scope of discovery is within the sound discretion of the trial court." *In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020) (quoting *Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988)); *see also Crawford-El v. Britton,* 523 U.S. 574, 598–99 (1998) (trial court is afforded broad discretion to control and dictate the sequence of discovery); *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (district courts have broad discretion to manage the discovery process and control their dockets) (internal citations omitted); *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-00033, 2019 WL 5957004, *1 (M.D. Tenn. Oct. 29, 2019) (ultimately, the scope of discovery is within the broad discretion of the trial court) (internal citations omitted).[5]

The trial court is directed to prevent discovery that falls outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Discovery may be denied if: (i) it is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome,

---

[5] That sentiment has continued throughout revisions to Rule 26 including the most recent ones. The Court also possesses inherent authority to manage litigation. As noted by the First Circuit, "[a]s lawyers became more adept in utilizing the liberalized rules … [t]he bench began to use its inherent powers to take a more active, hands on approach to the management of pending litigation." *In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1011 (1st Cir. 1988). "The judiciary is 'free, within reason, to exercise this inherent judicial power in flexible pragmatic ways.'" *Id*. at 1011 n.2 (quoting *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F. 2d 908, 916 (1st Cir. 1988)).

or less expensive; (ii) the requesting party has already had ample opportunity to obtain it; or, (iii) it falls outside the scope of discovery set forth in Rule 26(b)(1). *Id.* Generally, the party seeking discovery is obliged to demonstrate relevance. When the information sought appears to be relevant, "the burden shifts to the party resisting discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case," *Allgood v Baptist Mem'l Med. Grp., Inc.*, No. 19-2323-JTF-tmp, 2020 WL 86455, *1 (W.D. Tenn. Jan. 7, 2020) (citation omitted), or to establish that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm. *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015). Otherwise, the party opposing production generally bears the burden of establishing that the discovery sought falls beyond the purview of Rule 26. *See Shropshire v. Laidlaw Transit, Inc.*, No. 06–10682, 2006 WL 6323288, *2 (E.D. Mich. Aug. 1, 2006) ("The party who resists discovery has the burden to show discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections.")

Although a party should not be denied access to information necessary to prove their contentions, neither should they be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted). "A court must balance the right to discovery with the need to prevent fishing expeditions." *Id*. at 236–37 (internal quotation omitted) (citation omitted). Objections to broad discovery that requests information without temporal limits that are confined by the specific litigation or that requests such things as identification of all communications or persons with whom communications occurred related to a general topic will be more likely to be sustained.

6

### III.    DISCOVERY DISPUTES AT ISSUE

PennyMac presents four discovery issues to the Court for resolution: (1) whether Plaintiff must produce medical records; (2) whether Plaintiff must produce bank records; (3) whether Plaintiff must produce a copy of the settlement agreement between Plaintiff and SWBC; and (4) the general sufficiency of PennyMac's written responses to Plaintiff's interrogatories.

### 1.    Medical Records

PennyMac asks the Court to order Plaintiff to produce medical records that Plaintiff refuses to provide. The request for production at issue and Plaintiff's response are as follows:

RFP No. 17:    [Produce] [a]ll medical records, notes, bills or other documents for any treatment that you have sought or received between January 1, 2017 and the date of your responses to these Requests that you contend was necessitated by the alleged actions or inactions of Pennymac or SWBC.

Response:    Lawson objects to Request for Production of Documents No. 17 from Pennymac because the information is privileged. The documents are best described as protected by HIPAA regulations and private health information.

Additionally, Lawson objects to this request because it seeks documentation that includes the inactive claim of Intentional Infliction of Emotional Distress. It would help if Pennymac could be more specific as to why it needs medical records for the breach of contract claims. Lawson has not claimed any medical bills for reimbursement as a result of breaches of contract. Instead, she used the per diem methodology for calculating pain and suffering. If Pennymac still believes it is entitled to Lawson's medical records, it would be helpful to understand why Pennymac thinks it's relevant. An explanation from Pennymac could help determine whether Lawson needs to provide a Motion for Protective Order.

Supp. Response:    First, I do not allege that my medical records are relevant to my claim for breach of contract. Second, Defendant did not address my objections. Third, Defendant referenced ten allegations in the Operative Complaint that it claims places my "mental and physical health directly at issue in these proceedings by alleging that Pennymac's actions adversely affected [my] physical and mental

7

> health. However, none of the referenced allegations allege that my physical or mental health were adversely affected by one of Defendant's breaches of contract. Pennymac's breaches of contract were not precipitated by my health, and the damages claimed for breach of contract do not include health-related bills. Fourth, if Pennymac has legitimate concerns about my ability to testify competently, completely, and accurately at trial, then it should immediately alert the Court. If true, that is a serious concern for escalation. The Court, did however, read the same ten allegations in the Operative Complaint, and did not draw Defendant's dramatic conclusion. Nor do I arrive at Defendant's conclusion.

(Docket No. 150-1 at 2–3.)[6]

PennyMac asserts that Plaintiff confirmed at her deposition that she still intends to seek damages for pain and suffering as result of PennyMac's alleged breach of contract.[7] (*Id.* at 3.) Although PennyMac contends that damages for pain and suffering are not recoverable, it asserts that it should nevertheless be able to discover these records because Plaintiff has put her physical and mental health at issue. (*Id.*) PennyMac points to the allegations in Plaintiff's complaint wherein she references the ways in which PennyMac's actions have allegedly impacted her health. (*Id.*) PennyMac also claims that Plaintiff stated in correspondence from November 2019 and at other times that she had been "diagnosed with mild cognitive impairment," so therefore PennyMac is entitled to discover how, or if, Plaintiff's medical condition affected her actions in connection

---

[6] Some of this information has not been filed on the record, but was provided to the Court in compliance with the Court's orders that PennyMac provide it with all discovery requests propounded by both PennyMac and Plaintiff, and all documents produced by both PennyMac and Plaintiff. (Docket No. 159.) PennyMac did so by emailing the Court with a link to download the requested documents on April 28, 2025. The information cited above is found on pages 45 to 46 of a document titled "Plaintiff's Amended and Supplemented Responses to Defendant's First Continuing Interrogatories and First Continuing Requests for Production," which PennyMac labeled as Document No. 13.

[7] PennyMac did not provide the Court with a copy of the deposition transcript, so the Court is not able to verify that Plaintiff did, indeed, make a statement to this effect.

with her attempted rebuild that is the subject of this action. (*Id.* at 3–4.) PennyMac did not provide the Court with a copy of this correspondence. Further, PennyMac does not offer any legal authority to support its general position.

In response, Plaintiff argues that her medical records are not relevant to her remaining claim for breach of contract. (Docket No. 156 at 2–3.) She contends that the Health Insurance Portability and Accountability Act ("HIPAA") shields her from providing this information because it "establishes national standards for the protection of individually identifiable health information, which is known as Protected Health Information (PHI)." (*Id.* at 2.) However, Plaintiff does not point to any specific provisions within HIPAA that would support her position. She also argues that, although she has "claimed pain and suffering damages related the breach of contract claim," those allegations are not "medically related" and her health is, therefore, "out of scope." (*Id.*) She contends that her "health records are not reasonably calculated to make a consequential fact about breach of contract more or less probable." (*Id.* at 3.)

Although neither party has offered the Court any applicable legal authority, the Court finds that PennyMac is not entitled to discovery of Plaintiff's medical records. It is a general rule under Tennessee law that non-economic damages like "pain and suffering" and "mental anguish" are not recoverable for a breach of contract. *Harrison v. Am. Airlines, Inc.*, No. 3:24-CV-00381, 2024 WL 5199347, at \*9 (M.D. Tenn. Dec. 23, 2024) (citing *Kindred v. Nat'l Coll. of Bus. & Tech., Inc.*, 2015 WL 1296076, at \*11 (Tenn. Ct. App. Mar. 19, 2015) ("In Tennessee, the general rule is that there can be no recovery of damages for mental anguish occasioned by a breach of contract.")). *See also Kindred v. Nat'l Coll. of Bus. & Tech., Inc.*, No. W2014–00413–COA–R3–CV, 2015 WL 1296076 (Tenn. Ct. App. 2015) ("In Tennessee, the general rule is that there can be no recovery of damages for mental anguish occasioned by a breach of contract."); *Johnson v. Women's Hosp.*,

9

527 S.W.2d 133, 141 (Tenn. Ct. App. 1975) ("The general rule is that punitive damages are not recoverable in a contract action and neither are damages for mental anguish[.]") As detailed above, the only remaining claim in this litigation is for breach of contract.

Accordingly, because Plaintiff cannot recover non-economic damages for her breach of contract claim, there is no need basis for discovery of those damages. However, for that same reason, Plaintiff may not rely on her medical conditions to support her allegations at trial or in dispositive motion briefing.

Further, to the extent PennyMac believes that "Plaintiff's medical condition (or medications taken as a result of any medical condition) may affect her ability to give full and complete testimony at trial," either party may file a separate motion seeking whatever relief they believe would be appropriate. At this juncture, the Court will not allow PennyMac to discover information about Plaintiff's medical condition when that condition has no bearing on PennyMac's liability for breach of contract, which is the only remaining claim.

## 2. Bank Records

PennyMac asks the Court to order Plaintiff to produce bank records that Plaintiff refuses to provide. The request for production at issue and Plaintiff's response are as follows:

RFP No. 19: [Produce] [a]ll bank records, 401k statements, or other documents evidencing financial accounts owned or controlled by You between January 1, 2017 and December 31, 2020.

Response: Lawson objects to Request for Production of Documents No. 19 from Pennymac because the request is overly broad, most of which does not make a consequential fact more or less probable. Additionally, Lawson objects to the disproportionate level of detail being requested, which is almost wholly beyond the scope of the breach of contract claims. It would help if Pennymac could please be specific about what it needs. For example, is Pennymac looking for some specific line items or a total in and out by month? When

being more specific, it would also help if Pennymac could please explain how this request relates to its breaches of contract.

Subject to and without waiver of the foregoing objections, Lawson has provided any 401K account and car loan documentation (as part of Lawson's Divorce Decree) via Dropbox. See preliminary statement for instructions.

Supp. Response:

You are saying that you need to find out if I had additional funds available to me. I could show you this by providing you with aggregate data, such as giving you the total deposits for each bank statement. Also, I objected to the scope based on the dates you requested. Your deficiency response generalizes the scope by saying, "during the relevant time period." I don't know if you're agreeing with my objection, or if you still think the initially requested timeframe is appropriate. If this works for you, it would be quickest for you to mention it directly as opposed to waiting until I read knee-deep into any more discovery letters.

(Docket No. 150-1 at 4.)[8] PennyMac argues that "Plaintiff has supported her claim that a rebuild of her home that is at issue in this case was not economically feasible because Plaintiff's only source of funding for that rebuild was her insurance proceeds from Farm Bureau Insurance," and therefore it should be able to discover banking records "during the relevant period." (*Id.* at 4–5.) It also states that it has received some documents from non-party Ten Credit Union in response to a subpoena. (*Id.* at 5.)

In response, Plaintiff argues that the scope of the request is too broad and is not relevant to the remaining breach of contract claim. She contends that PennyMac is seeking a "line-item accounting" of her banking activity in the hopes that it will make a jury believe that she has mismanaged her money. (Docket No. 156 at 3.) She has asked PennyMac to provide her with more

---

[8] *See supra*, n.6. The information cited above is found on pages 34 to 35 of a document titled "Plaintiff's Responses to Defendant PennyMac Loan Services LLC's First Continuing Interrogatories and First Continuing Requests for Production," which PennyMac labeled as Document No. 12.

detailed information about what kinds of documents they are looking for and has offered to provide PennyMac with "aggregate data." Plaintiff also believes that the date range included in PennyMac's request – November 2018 to March 2020 – is too broad. She states that she was "was uninformed of the dependency of economic feasibility on [her] ability to rebuild with either lender before mid December 2019." (*Id.* at 4.) However, based on this statement, the Court is not certain if Plaintiff believes that documents before or after December 2019 are irrelevant.

The Court finds that PennyMac is entitled to discover documents related to Plaintiff's finances, though the scope of its request must be limited. Plaintiff must produce monthly statements from all banking and financial institutions that she used from November 1, 2017, the month during which a fire destroyed Plaintiff's home, to December 31, 2020. In other words, Plaintiff is not obligated to produce records demonstrating all transactions made from November 1, 2017 to December 31, 2020. The Court finds that such detail is irrelevant. It appears to the Court that Plaintiff had an account with Ten Credit Union, but Plaintiff must produce documents from all financial and banking institutes that she used, including but not limited to Ten Credit Union. Unless otherwise permitted by separate order, PennyMac is however limited in its use of these documents to the purposes for which it purports to have sought the information, specifically, to rebut Plaintiff's claim that a rebuild of her home was not economically feasible.

**3.      Settlement Agreement**

PennyMac also asks the Court to order Plaintiff to produce the December 2024 settlement agreement into which she entered with former Defendant SWBC. (Docket No. 150-1 at 5–7.) The request for production at issue was served on February 12, 2025. The request and Plaintiff's response are as follows:

12

| | |
|---|---|
| Supp. RFP No. 1: | Please produce a full and complete copy of any settlement agreement (including all exhibits thereto, if any) that you have entered into with SWBC Mortgage Corp. between December 1, 2024 and the date of your response to this Request that resulted from the settlement or compromise of any of your claims in the Lawsuit. *See Safeco Ins. Co. of America v. City of White House, Tenn.*, 191 F.3d 675, 693 (6th Cir. 1999) ("Tennessee does not apply the collateral source rule to contract actions.") (citing *Drewrey v. Continental Cas. Co.*, No. 03A01-9111, CH-418, 1992 WL 60876, at **506 (Tenn.Ct.App. Mar. 30, 1992)). |
| Response: | Unfortunately, as I've already stated several times, the Court must compel a response before I may answer this question. |

(Docket No. 150-1 at 6; Docket No. 157 at 42.)

In support of its request, PennyMac argues that the collateral source rule is inapplicable to breach of contract claims, so the settlement agreement between Plaintiff and SWBC is "plainly discoverable and necessary" to determine whether it is entitled to a setoff and what the scope of any release might be. (Docket No. 150-1 at 6.) PennyMac also states that it has "now received this requested information about the settlement payment from SWBC Mortgage Corp. and Plaintiff in documentation received from non-party Ten Credit Union in response to a Rule 45 subpoena issued by Pennymac." (*Id.* at 5–6.)

In response, Plaintiff does not explicitly argue that discovery of this document is impermissible. Instead, she states that she believes she must be compelled by the Court to provide the document before she is permitted to share it. (Docket No. 156 at 4–5.)

The Court finds that PennyMac is already in possession of the requested document, so this dispute is largely irrelevant. Nevertheless, to the extent PennyMac believes that it needs an additional copy from Plaintiff, the Court will order Plaintiff to produce the requested document, but the document shall be designated for attorney's eyes only. PennyMac states that the settlement agreement is "necessary to determine whether Pennymac is entitled to a setoff in this matter with

13

respect to Plaintiff's breach of contract claim against Pennymac (which is similar, if not identical, to Plaintiff's breach of contract claim against SWBC Mortgage Corp.) and, if so, in what amount." (*Id.* at 6.) In other words, PennyMac's counsel seeks to make a legal determination from the settlement agreement, so there is no need for anyone aside from PennyMac's counsel to review this document.

### 4.      PennyMac's Interrogatory Responses

The fourth and final issue in the discovery dispute statement is whether PennyMac's responses to Plaintiff's interrogatories are proper. (Docket No. 150-1 at 7.) PennyMac included this last issue because Plaintiff took issue with its discovery responses. However, PennyMac did not include any information about which discovery requests are at issue.

In her response, Plaintiff details why she believes that certain of PennyMac's responses to her discovery requests are insufficient. She takes issue with PennyMac's responses to Requests for Admission Nos. 1, 19– 22, and Interrogatories Nos. 1–4, 6–18, 23. (Docket No. 156 at 5–31.)

The Court will not rule at this time on the propriety of these discovery requests. The specific requests at issue were not included in the original discovery dispute statement, though they were generally referenced. Further, PennyMac has not provided the Court with its position on whether its responses to the specific requests identified by Plaintiff are proper. Accordingly, the Court will order PennyMac to file a reply to this portion of Plaintiff's response as detailed below. It is simply not feasible for the Court to search through the parties' discovery filings to apprise itself of the parties' positions on these particular discovery requests.

### IV.      CONCLUSION

For these reasons, PennyMac's motion for discovery conference (Docket No. 149) is **DENIED AS MOOT** and PennyMac's amended motion for discovery conference (Docket No.

14

150) is **DENIED** to the extent the Court does not find it necessary to conduct a discovery conference to resolve the parties' current discovery issues. The specific discovery issues about which the Court has sufficient information are resolved as addressed above.

Further, PennyMac is **ORDERED** to file a reply by no later than **14 days after the date of entry of this order** to address the alleged discovery deficiencies detailed by Plaintiff in her response to PennyMac's amended motion for discovery conference. (Docket No. 156 at 5–31.)

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

15